UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRANDENBURG HEALTH FACILITIES,
LP, et al.,                                                                             Plaintiffs,

v.                                        Civil Action No. 3:15-cv-833-DJH

IVYE MATTINGLY,                                                 Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

At its core, this litigation revolves around accusations that Mary Jo Hancock, a former resident at Brandenburg Health Facilities in Meade County, Kentucky, suffered physical and emotional injuries as a result of negligent care. (*See* Docket No 5-1, PageID # 123) The underlying case has proceeded in state court so far, but now the plaintiffs to this action—the defendants in the state court proceedings—have brought this federal suit to enjoin the state court action and enforce an arbitration agreement. (*See* D.N. 4-1, PageID # 74)

This Court recently addressed similar issues in a different case. *See GGNSC Louisville Mt. Holly, LLC, et al. v. Leslie Guess Mohamed-Vall*, No. 3:16-cv-136-DJH, (W.D. Ky. April 6, 2016) (D.N. 19). The parties to this case are represented by the same counsel that represented the parties in *Mohamed-Vall*. And those lawyers have submitted briefs in this litigation containing practically identical legal arguments as did the briefs the Court addressed in *Mohamed-Vall*. As in *Mohamed-Vall*, the Court will deny the defendant's motion to dismiss, compel arbitration (for all but the wrongful-death claim), and enjoin the defendant from pursuing in state court all causes of action besides the wrongful-death claim.

## I.   BACKGROUND

Mary Jo Hancock lived at Brandenburg Nursing & Rehabilitation center from September 2009 until March 2013.  (D.N. 5-1, PageID # 123)  Before she took up residency there, Mary Jo signed a durable power of attorney agreement that named her husband, Sidney James Hancock, as her attorney-in-fact.  (*See* D.N. 1-4, PageID # 56, 63-64)  The defendant in this suit, Ivye Mattingly, was named as an alternate attorney-in-fact if Sidney became unable or unwilling to continue to act in that capacity.  (*Id.*, PageID # 63)  Among other things, the POA confers upon the attorney-in-fact the power to "make and enter into any contract or contractual arrangement," and it confers the powers of health care surrogate.  (D.N. 1-4, PageID # 56-57)

Later, while acting under the POA, Mattingly signed the arbitration agreement (*see* D.N. 1-2) that is now under dispute.  (D.N. 4-1, PageID # 75)  The agreement purportedly "applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the State in which the Center is located and shall include . . . negligence; gross negligence; malpractice' death or wrongful death."  (D.N. 1-2, PageID # 16)  And, under the agreement, the signatories gave "up their constitutional right to have their disputes decided by a court of law."  (*Id.*)

In July 2013, Mattingly filed suit in Meade County Circuit Court alleging negligent treatment of Mary Jo.  (D.N. 4-1, PageID # 74)  The plaintiffs to this action (the defendants in Meade Circuit Court) filed a motion to dismiss the state court proceedings and to compel arbitration.  (D.N. 5-1, PageID # 124)  Along the way, some state court defendants were dismissed.  (*Id.*)  Mary Jo passed away in February 2014, and Mattingly became the administratrix of her estate.  (*Id.*)  In August 2015, the state court held the suit in abeyance

pending the resolution of another Kentucky state court case, which in turn was also held in abeyance while the Kentucky Supreme Court decided yet another case—*Whisman*. (*Id.*) After *Whisman* was decided, the remaining state court defendants filed this suit in November 2015. (*Id.*, PageID # 125) Upon filing this suit, the plaintiffs moved for the Court to compel arbitration and enjoin Mattingly from pursuing her state court claims. (D.N. 4) Mattingly then moved to dismiss the complaint. (D.N. 5) As stated above, though the parties to this suit are different, the lawyers on both sides have other cases before this Court which present nearly identical legal issues. The briefings from both sides were practically identical to briefings in the *Mohamed-Vall* case that this Court addressed in a recent memorandum opinion. (*Compare* (D.N. 4, 5) *with Mohamed-Vall*, No. 3:16-cv-136-DJH, (D.N. 4, 12))[1] The legal conclusions the Court reaches here are consistent with those in *Mohamed-Vall* and an earlier case, *Watkins*.[2]

## II. MOTION TO DISMISS

The Court will deny Mattingly's motion to dismiss. Consistent with the Court's prior holdings, the Court is unpersuaded by Mattingly's myriad reasons for dismissal. Thus, the Court will deny the motion.

**A.     Jurisdiction**

This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a)(1), despite Mattingly's contention to the contrary. Mattingly contends that the presence of Betty Appleby, one of the nursing home administrators, as a defendant in the state case defeats diversity here because Appleby, like Mattingly, is a resident of Kentucky. (D.N. 5-1, PageID # 133) Mattingly

---

[1] And, as the Court noted in that memorandum opinion, "Mohamed-Vall's counsel has filed nearly identical motions in several similar cases, and courts have routinely denied these motions." 3:16-cv-136-DJH (D.N. 19, PageID # 341)(citations omitted)
[2] *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902, 2016 WL 815295, at *2 (W.D. Ky. Feb. 29, 2016).

3

cites *Vaden v. Discover Bank*, 556 U.S. 49 (2009), but as the Court previously explained in *Watkins*, *Vaden v. Discover Bank* only applies to federal question jurisdiction, not diversity jurisdiction. 2016 WL 815295, at *2. Accordingly, the Court need not look through to the underlying suit. The Court finds the requisite diversity jurisdiction exists.

**B.      Indispensable Parties**

Mattingly argues that the Court should dismiss this suit for failure to join indispensable parties. (D.N. 5-1, PageID # 142-44) The Court addressed this very issue in *Watkins*. *See* 2016 WL 815295, at *2-3. The presence of the nursing home administrators in the state court action does not make them indispensable here. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203-04 (6th Cir. 2001). A party is required to be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The Court can decide the entire controversy between the existing parties without the administrators being named in the suit.

> Rule 19 also requires a party to be joined if
>
> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). This is not the case here. The absent administrator's "interest," like Brandenburg's interest, is to compel arbitration. And the existing parties will not incur inconsistent obligations because a ruling by this Court that compels arbitration will bind the parties in the parallel state court action. Further, the Court need not address Rule 19(b) because the parties are not required to be joined under Rule 19(a). *See Sch. Dist. of City of Pontiac v. Se'y of U.S. Dep't of Educ.,* 584 F.3d 253, 264-65 (6th Cir. 2009) (if the absent party is not

4

required under Rule 19(a), then there is no reason to go to the second step of the analysis because Rule 19 does not foreclose the litigation). Thus, the Court finds that the administrator is not an indispensable party.

**C.**     ***Colorado River* Abstention**

Mattingly asks the Court to abstain from exercising its jurisdiction. (D.N. 5-1, PageID # 125-28) The Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976), emphasized that abstention was the exception, not the rule, stating that "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813.

To determine if the Court should abstain under *Colorado River*, the Court must weigh eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (internal quotation marks omitted). These factors weigh against abstention. First, property is not at issue here, and second, this Court is just as convenient for the parties as the state court; the two courts are separated by less than an hour's drive. As for the third factor, the Court will compel arbitration, which will avoid any piecemeal litigation among the existing parties. The Court considers the fourth factor to be a wash because the state court proceeding has not proceeded to the merits. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much

5

progress has been made in the two actions."). Fifth, the governing law here, the Federal Arbitration Act (FAA), is federal. Sixth, the Court reiterates its finding in *Watkins*: it is unlikely that the state court will adequately protect Brandenburg's contractual right to arbitrate in light of the Kentucky Supreme Court's recent holding in *Whisman*. *Watkins*, 2016 WL 815295, at *3-4. Seventh, the proceedings are at the same point, considering whether to compel arbitration. And eighth, there is concurrent jurisdiction.

Because nearly every *Colorado River* factor weighs against abstention, the Court will exercise jurisdiction.

**D.      Substantive Dismissal Standard**

The rest of Mattingly's asserted grounds for dismissal rely on Federal Rule of Civil Procedure 12(b)(6). Mattingly asserts that Brandenburg's complaint should be dismissed because it is fatally flawed on its legal premises. (*See* D.N. 5-1, PageID # 137) To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Brandenburg's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id*. A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8. *Id*. at 679. Under this standard, Brandenburg's complaint is sufficient. The complaint stated enough to plausibly infer that there is an arbitration agreement

between the two that must be honored, and that Kentucky case law to the contrary violates the Constitution's Equal Protection Clause.

**E.     Estoppel**

Mattingly contends that Brandenburg is estopped from seeking to compel arbitration because all of the parties consented to state court adjudication of the validity of the arbitration agreement. (D.N. 5-1, PageID # 137) "An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations." *Lyng v. Payne*, 476 U.S. 926, 935 (1986). Mattingly cannot claim detrimental reliance, however, since she does not, and apparently cannot, allege that the parties agreed to litigate the enforcement of the arbitration agreement exclusively in state court.

**F.     Laches**

The next argument from Mattingly suggests that Brandenburg's complaint should be dismissed under the common law principle of laches. Laches is "a negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991)). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Id*. (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)). The Court finds no lack of diligence by Brandenburg. It was only after the Kentucky Supreme Court made *Whisman* final that Brandenburg sought relief in this court, fearing that the Meade Circuit Court, which is bound by *Whisman*, could not protect its contractual interests. *See Whisman*, 2015 WL 5634309. Having concluded that Brandenburg acted diligently, dismissal is not warranted on this ground.

**G.    Validity and Enforceability of the Arbitration Agreement**

Mattingly next claims that the arbitration agreement was executed without sufficient authority and, even if there was sufficient authority, the agreement is unconscionable. (D.N. 5-1, PageID # 139- 42)  The Court rejects both of these arguments.

First, the arbitration agreement was executed with sufficient authority because Mattingly acted pursuant to a valid POA.  In *Sorrell v. Regency Nursing, LLC*, No. 3:14-CV-304, 2014 WL 2218175, *4-6 (W.D. Ky. May 28, 2014), the Court examined a power of attorney that contained language similar to that of the POA here and found that the attorney-in-fact was authorized to execute an arbitration agreement on behalf of the principal.  This Court agrees with the reasoning in *Sorrell*.  The POA here expressly authorized Mattingly to "enter into any contract or contractual arrangement . . . of any kind and nature."  (D.N. 1-4, PageID # 56)  It also gave Mattingly the powers of health care surrogate, including the authority to "consent to a plan or treatment . . . [or to] admit [Hancock] to a . . . long term care facility."  (*Id*., PageID # 57)  Additionally, the POA granted Mattingly the power to compromise and settle claims on Hancock's behalf, and she had the full "right and power to institute any legal action on [Hancock's] behalf." (*Id*., PageID # 58)

Finally, the POA lacks limiting language and, indeed, expressly states that "[t]he enumeration of specific items, rights, acts, or powers herein is not intended to, nor does it limit or restrict the general powers granted to said attorney-in-fact."  (*Id*., PageID # 61)  Thus, the Court finds that the POA was broad and granted Mattingly sufficient authority to execute an arbitration agreement on Hancock's behalf.  *See Sorrell*, 2014 WL 2218175, at *6.

The Kentucky Supreme Court's holding in *Whisman* does not alter this Court's conclusion.  The *Whisman* court held that a power of attorney must expressly provide the

authority to bind the principal to an arbitration agreement. *See* 2015 WL 5634309 at *10-15. The FAA's purpose, however, is "to place arbitration agreements upon the same footing as other contracts." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted). Accordingly, the Court will not apply *Whisman* to the extent that it conflicts with U.S. Supreme Court precedent[3] by treating an agreement to arbitrate differently than any other contract.

Second, the arbitration agreement is not unconscionable. As explained in *Watkins*, there are two forms of unconscionability: procedural unconscionability, "which pertains to the process by which an agreement is reached," and substantive unconscionability, which "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." 2016 WL 815295, at *6 (quoting *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 n.22 (Ky. 2001) (citation omitted)). And like the arbitration agreement in *Watkins*, there was nothing either procedurally or substantively unconscionable about this arbitration agreement. *See* 2016 WL 815295, at *6. Mattingly's procedural-unconscionability argument rests on the lengthy admissions process in which she signed numerous agreements. (D.N. 5-1, PageID # 141-42) This alone does not make a contract procedurally unconscionable. *Watkins*, 2016 WL 815295, at *6.

And despite Mattingly's complaint about the disparity of bargaining power, the contract is not substantively unconscionable. (D.N. 5-1, PageID # 141-42) Like the agreement in

---

[3] As this Court has noted previosuly, *see Watkins*, 2016 WL 815295, at *5 n.3, the *Whisman* opinion conflicts with applicable federal law. *See Whisman*, 2015 WL 5634309, at *36 (Abramson, J., dissenting) ("[A]s the United States Supreme Court has made absolutely clear, what state law cannot do directly—disfavor arbitration—it also cannot do indirectly by favoring arbitration's correlative opposite, a judicial trial. Since that is the express purpose of the rule the majority pronounces and since the application of that rule will clearly have a disproportionate effect on the ability of agents to enter arbitration agreements (as opposed to other contracts), the majority's new rule is plainly invalid.").

*Watkins*, nothing about the agreement itself is unconscionable: it is plainly stated; its implications are in capital letters; it does not limit recovery; it is reciprocal; and Mattingly could have opted out of the agreement within thirty days of signing it.

In sum, the Court finds that the agreement is valid and enforceable.

**H.     FAA Jurisdiction**

Mattingly argues that the FAA is inapplicable to the facts of this case. (D.N. 5-1, PageID # 144-45) The FAA applies to "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. As the Court stated in *Watkins*, "the Supreme Court has interpreted these words broadly and found that the FAA's reach is as expansive as Congress's reach under the Commerce Clause." 2016 WL 815295, at *4 (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995)). The Commerce Clause "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (internal quotation marks omitted). In *Glen Manor Home for Jewish Aged v. N.L.R.B.*, 474 F.2d 1145 (6th Cir. 1973), the Sixth Circuit found that the nursing home industry's aggregate economic activity, such as receiving Medicaid funding and dealing with interstate vendors, affected commerce. *See id*. at 1149. Brandenburg's allegation that the arbitration agreement involved interstate commerce is therefore plausible.

**I.     Anti-Injunction Act**

Mattingly argues that the Anti-Injunction Act prevents this Court from enjoining the state court action as a matter of law, and that because this action is to compel arbitration, it should be dismissed. (D.N. 5-1, PageID # 145-48) However, "a district court's injunction of state-court proceedings after compelling arbitration [does] not violate the Anti-Injunction Act." *GGNSC*

10

*Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *10 (W.D. Ky. Dec. 19, 2013) (citing *Great Earth*, 288 F.3d at 893). An injunction concurrent with an order compelling arbitration falls into the "necessary . . . to protect or effectuate [the district court's own] judgments" exception to the Anti-Injunction Act. *Id*. at 893; *see* 28 U.S.C. § 2283. Indeed, "[a]n injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue." *Great Earth*, 288 F.3d at 893. Thus, enjoining Mattingly from proceeding against Brandenburg in the state court action will not violate the Anti-Injunction Act.

**J.    Brandenburg's Constitutional Claims**

Finally, Mattingly contends that Brandenburg's constitutional claims, Counts II and III of the complaint, must be dismissed pursuant to Rule 12(b)(6). The Court declines to address Brandenburg's constitutional claims at this stage because it is not necessary for the resolution of the instant motions.

### III.    MOTION TO COMPEL ARBITRATION

The Court will grant Brandenburg's motion to compel arbitration and enjoin Mattingly from pursuing the state-court action against the plaintiffs in this case. The FAA states that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. Further, an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding whether to compel arbitration, this Court must (1) "determine whether the parties agreed to arbitrate"; (2)

11

"determine the scope of that agreement"; (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Here, the Court concludes that the parties executed a valid arbitration agreement; that the agreement requires arbitration of the claims asserted in Mattingly's Meade Circuit Court complaint; that Mattingly has not asserted federal statutory claims; and that the remainder of the federal proceedings will be stayed. (D.N. 1-2; *see* D.N. 1-3, PageID # 38-46) Therefore, the Court will compel arbitration for all of the state law claims except the wrongful-death claim.

A.  **The Wrongful-Death Claim**

Recent Sixth Circuit case law makes clear that this Court cannot compel arbitration on Mattingly's wrongful-death claim. *See Richmond Health Facilities, et al. v. Nichols*, No. 15-5062 (6th Cir. Jan. 15, 2016). There, the Sixth Circuit upheld a decision from the Eastern District of Kentucky that Kentucky state law treats wrongful-death claims as independent of any claims held by the decedent. Beneficiaries of a wrongful-death claim are not barred by arbitration agreements between decedents and nursing homes from pursuing the wrongful death claim in court. *Id*. at *4-5. Mattingly signed the arbitration agreement while acting as attorney-in-fact for Mary Jo Hancock. Though Hancock was bound by the agreement, she had "no cognizable legal rights in the wrongful death claim[]" that Mattingly now pursues. *Id*. at *6 (quotation omitted). And so, "the [arbitration agreement] cannot be enforced against wrongful-death beneficiaries." *Id*. at *6-7 (citation omitted). Given this binding authority, the Court will

12

compel arbitration on all but the wrongful-death claim. Mattingly may pursue the wrongful-death claim in court.

## IV. CONCLUSION

The Court will deny Mattingly's motion to dismiss. Finding a valid arbitration agreement covers all of Mattingly's claims against Brandenburg in her Meade Circuit Court complaint except for the wrongful-death claim (D.N. 1-3, PageID # 38-46), the Court will also grant Brandenburg's motion to compel arbitration for all but the wrongful-death claim. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Plaintiffs' motion to compel arbitration and enjoin the state court action (D.N. 4) is **GRANTED**. Mattingly is **ENJOINED** from proceeding against Plaintiffs in the Meade Circuit Court action on all but the wrongful-death claim. The parties are **COMPELLED** to arbitrate pursuant to the terms of the parties' agreement (D.N. 1-2) the claims which are the subject of Mattingly's Meade Circuit Court complaint, excluding only the wrongful-death claim. Counsel shall promptly inform the Meade Circuit Court of this Memorandum Opinion and Order.

(2) Pursuant to 9 U.S.C. § 3, this proceeding is **STAYED** until the conclusion of the ordered arbitration, at which time the Court will decide whether to enter judgment approving any arbitral award. The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the resolution of the arbitration. The parties shall promptly report on the resolution of the arbitration, or of any settlement.

(3) Defendant Mattingly's motion to dismiss (D.N. 5) is **DENIED**.

June 20, 2016

**David J. Hale, Judge
United States District Court**

14